# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS MICHAEL GIECK,<br>　　　　　　　　　　　　Plaintiff,<br>　vs.<br>MARTIN EARLE LEVIN and AN MINH NGUYEN,<br>　　　　　　　　　　　　Defendants. | CASE NO. 05-CV-01974-H (RBB)<br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On October 18, 2005, Plaintiff Dennis Michael Gieck ("Plaintiff"), a state prisoner incarcerated at Calipatria State Prison in Calipatria, California, proceeding *pro se* and *informa pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against defendants Dr. Martin Earle Levin and Dr. An Minh Nguyen ("Defendants"). Plaintiff claims that Defendants showed deliberate indifference to treatment of Plaintiff's cervical condition, skin infections, and pain.

On November 13, 2006 Defendants filed a motion for summary judgment. (Doc. Nos. 43, 46-51.) On March 21, 2007 the Court granted Defendants' motion for summary judgment. (Doc. No. 106.) On April 4, 2007 Plaintiff filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit. (Doc. No. 116.) On August 10, 2009 the United States Court of Appeals for the Ninth Circuit reversed and remanded the decision of the Court for failing to give Plaintiff notice of the requirements of Federal Rule of Civil Procedure 56 under Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc). (Doc. No. 128.) On October 26, 2009 Defendants filed a motion for summary judgment. (Doc. No. 132.) On October 27, 2009 the

Court provided Plaintiff with notice of the motion for summary judgment pursuant to Rand and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. No. 133.) On December 4, 2009 Plaintiff filed an opposition to Defendants' motion for summary judgment stating no new facts or new law. (Doc. No. 134.)

The Court exercises its discretion to decide this matter on the papers pursuant to Local Civil Rule 7.1(d)(1). (Doc. Nos. 129, 133.) For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment.

### **Background**

Plaintiff entered Calipatria State Prison on February 11, 1998. (Notice Mot. And Mot. Summ. J. Defs.' Martin E. Levin M.D. and An Minh Nguyen, M.D., Ex. 2, at 7 (Defs.' Mot.").) On July 25, 2002, Plaintiff was transported to Pioneers Memorial Hospital ("PMH") for treatment of his neck pain. (Pl.'s Decl. Opp. Defs.' Mot. Summ. J. ¶¶ 6, 8 ("Pl.'s Decl.").) Plaintiff was diagnosed with acute cervical disk herniation with cord compression after an X-ray and MRI of Plaintiff's neck showed degenerative disk disease at the C5-6 level in Plaintiff's neck, and a disc protrusion at the C6-7 level. (Pl.'s Decl., Ex. C, at C1-3.)

On December 25, 2002, Plaintiff was diagnosed with acute sinusitis, peritonsillar cellulitis, and a lip abscess. (Id., Ex. F, at F9.) He was treated with intravenous Unasyn and oral Flagyl.[1] (Id.) On December 26, 2002, his abscess was incised and drained, and on December 27, 2002 Plaintiff was transferred to Alvarado Hospital to be treated by an otolaryngologist. (Id. at F10.) A culture from Plaintiff's lip area was collected on December 26, 2002, and a culture from Plaintiff's wrist was collected on January 22, 2003. (Id. at F5-F6.)

On April 24, 2003, Plaintiff saw Dr. David Smith, an orthopedic surgeon, who stated that Plaintiff had degenerative bone and disc disease in his cervical spine. (Id., Ex. C, at C9.) Dr. Smith reordered Plaintiff's prescriptions for Benadryl, Indocin, and Neurontin,[2] and suggested that he be referred to a neurosurgeon for possible surgery. (Id.)

On May 8, 2003, defendant Dr. Levin requested authorization for Plaintiff to

---

[1] The Court takes judicial notice that Unasyn and Flagyl are antibiotics.

[2] The Court takes judicial notice that Neurontin is sometimes used to treat chronic pain.

temporarily leave Calipatria to see an oncologist on May 19, 2003. (Id., Ex. G, at G3.) Plaintiff was seen in an Emergency Room on May 17, 2003 for a swollen right eyelid. (Id., Ex. F, at F13.) Plaintiff was treated with Bactrim,[3] along with triple antibiotic ointment. (Id. at F12-13.) On May 19, 2003, Plaintiff saw Dr. John Wilkinson, an oncologist, who diagnosed Plaintiff with "most likely cured Hodgkin's Disease," and treated him with biannual vaccinations. (Id., Ex. G, at G2.) He was also ordered to receive an oncology follow-up in one year, and cleared for neurosurgical procedures. (Id.)

On June 17, 2003, Dr. Barba, a neurosurgeon at Alvarado Hospital, ordered Plaintiff to receive an electromyogram from a neurologist. (Id., Ex. B, at B5.) He also recommended epidural steroid injections. (Id.) On October 6, 2003, Plaintiff received a prescription for Indocin, a nonsteroidal anti-inflammatory drug, and Vistaril. (Decl. Martin Levin, M.D., Supp. Def.'s Mot. Summ. J., ¶ 13 ("Levin Decl.").) On October 20, 2003, Dr. Andres Jacobo, a neurologist, saw Plaintiff, and agreed with Dr. Barba's medical plan for the treatment of Plaintiff's condition. (Pl.'s Decl., Ex. B, at B1, B6,B8.) On October 23, 2003, defendant Dr. Nguyen wrote an order for Plaintiff to receive epidural steroid injections at PMH. (Id., Ex. E., at E2.)

However, Plaintiff had an acute problem. Later on October 23, 2003, Plaintiff was admitted to Calipatria's outpatient housing unit ("OHU") for a fractured hand. (Levin Decl. ¶ 15; Defs.' Mot., Ex. 2, at 1160.) Plaintiff's treatment included replacing his Indocin with Motrin, which is a similar class of drug. (Levin Decl. ¶ 15.) When Plaintiff requested stronger pain medication, Vicodin[4] was prescribed, although Plaintiff's caretakers were concerned about Plaintiff's history of drug abuse. (Id. ¶ 16.) After Plaintiff requested to be treated with Indocin and Vistaril for his pain, he was prescribed those medications on October 29, 2003. (Id. ¶¶ 16, 17; Defs.' Mot., Ex. 2, at 684.)

After Plaintiff's fractured hand was treated, defendant Dr. Levin submitted a request,

---

[3] The Court takes judicial notice that Bactrim is an antibiotic.

[4] The Court takes judicial notice that Vicodin is a combination of acetaminophen and hydrocodone, which is a narcotic.

on November 3, 2003, for Plaintiff to be allowed to temporarily leave Calipatria State Prison in order to receive epidural steroid injections at PMH. (Pl.'s Decl., Ex. E, at E1.) On November 4, 2003, Dr. Nguyen wrote Plaintiff a prescription for Indocin. (Defs.' Mot., Ex. 2, at 994.) On November 5, 2003, Plaintiff was seen again by Dr. Jacobo. (Id., Ex. B, at B1-3.) Dr. Jacobo performed a nerve conduction test that showed evidence of chronic C7-8 radiculopathy. (Id. at B3-4.) Dr. Jacobo wrote defendant Dr. Levin, and suggested that Plaintiff be treated with cervical injections and pain medication. (Id. at B1, B3.) Plaintiff was seen as an outpatient at Calipatria later on November 5, 2003. (Id., Ex. F, at F7.) Dr. Nguyen determined that the Indocin he had prescribed Plaintiff the previous day was adequate to treat his pain at that time. (Id.)

On November 7, 2003, a medical provider from PMH stated that he was unable to perform cervical epidural steroid injections on Plaintiff, and that Plaintiff should be referred to another facility to receive this treatment. (Id., Ex. E, at E3.) On November 8, 2003, Plaintiff was seen as an outpatient at Calipatria. A note in Plaintiff's chart indicated he was ambulatory without any problems. (Id., Ex. F, at F7.)

On November 20, 2003, Plaintiff was seen as an outpatient at Calipatria. (Id. at F2.) A note was written indicating that Plaintiff was not able to receive a cervical epidural injection at PMH, and that they would try to have the procedure performed at Alvarado Hospital. (Id.) The note also indicated that Plaintiff was interested in restarting Neurontin for pain control, which Plaintiff had refused in September 2003. (Id.) Dr. Nguyen prescribed Neurontin for Plaintiff. (Defs.' Mot., Ex. 2, at 992.)

On November 25, 2003, Plaintiff submitted a California Department of Corrections inmate appeal form, form 602, log number CAL-D-04-00078, stating that he was dissatisfied that Dr. Nguyen did not prescribe Plaintiff antibiotics for an infection. (Id., Ex. D, at D2-D3.) On November 26, 2003, Plaintiff was diagnosed with a "right lower extremity abscess–recurring lesions." (Id., Ex. F, at F2.) He was treated with two antibiotics, Bactrim and

dicloxacillin.[5] (Id. at F1-2.)

On January 9, 2004, Plaintiff sent a letter to the California Medical Board stating that Defendants had failed to prescribe Plaintiff the correct antibiotics and analgesics to treat his symptoms. (Id., Ex. A, at A13-14.)

On February 18, 2004, a physician's progress note indicated that Indocin was ordered and that Plaintiff refused to go to the OHU to receive narcotic medication for his neck pain. (Levin Decl. ¶ 18.) On February 21, 2004, Plaintiff was seen for a nasal infection and Dr. Nguyen treated him with dicloxacillin. (Defs.' Mot., Ex. 2, at 676.) On February 23, 2004, Dr. Nguyen was seen again for his nasal infection and Dr. Nguyen prescribed Bactrim. (Id. at 676, 984.) On March 10, 2004 Plaintiff was seen for a follow up visit regarding his nasal infection. (Id. at 675.) Because the previous antibiotics had not cured the infection, Ciprofloxacin[6] was prescribed. (Id. at 675; Levin Decl. ¶ 18.)

On March 24, 2004, Plaintiff was seen for neck pain. (Id. 673.) He refused to stay in the OHU in order to receive injectable pain medication. (Id., Levin Decl. ¶¶ 19, 27; Pl.'s Decl. ¶ 12.) On March 27, 2004, Plaintiff was seen again for his neck pain, but did not want to be admitted if he was not going to receive stronger pain medication than Toradol or Tylenol # 3.[7] (Defs.' Mot., Ex. 2, at 673-74.) Plaintiff also refused admission to the OHU on May 1, 2004 and May 4, 2004 for pain control. (Levin Decl. ¶¶ 19, 27; Pl.'s Decl. ¶ 12.)

On August 16, 2004, Dr. Nguyen requested a consultation by Dr. Jacobo for epidural injections. (Levin Decl. ¶ 20; Pl.'s Decl., Ex. E, at E4.) A Dr. Sands denied the request on August 26, 2004. (Pl.'s Decl., Ex. E, at E4.) On September 21, 2004, a note was written in Plaintiff's chart indicating that his pain was well controlled. (Levin Decl. ¶ 21; Defs.' Mot., Ex. 2, at 648.) On October 2, 2004, defendant Dr. Levin informed Plaintiff that his pain medications required adjustment because Dr. Levin had received notification from Sacramento

---

[5] The Court takes judicial notice that Bactrim and dicloxacillin are antibiotics.

[6] The Court takes judicial notice that Ciprofloxacin is an antibiotic.

[7] The Court takes judicial notice that Toradol is a nonsteroidal anti-inflammatory drug and Tylenol # 3 is a combination of acetaminophen and codeine, which is a narcotic.

that Neurontin, which was one of the medications used to treat Plaintiff's pain, could only be used for FDA approved indications. (Levin Decl. ¶ 21.)

On October 19, 2004, the Medical Board of California sent Plaintiff a letter stating that based on his complaint against Dr. Nguyen, Medical Board Case number 10-2004-155123, the Board was referring the case to the California Attorney General's Office Health Quality Unit. (Pl.'s Decl., Ex. A, at A1.)

On November 16, 2004, the California Department of Corrections Inmate Appeals Branch denied Plaintiff's appeal, log number CAL-04-00078, regarding Dr. Nguyen's failure to prescribe Plaintiff antibiotics, after finding that Plaintiff was provided tetracycline[8] on August 16, 2004, and that Plaintiff's blood work was negative for infection on September 16, 2004. (Id., Ex D, at D5.)

On April 12, 2005, Plaintiff received Demerol[9] for his pain, and defendant Dr. Nguyen ordered a bone densitometry scan on Plaintiff's neck. (Levin Decl. ¶ 22.) On June 21, 2005, Plaintiff received morphine[10] for his pain. (Levin Decl. ¶ 23.)

On July 12, 2005, Dr. Nguyen requested Plaintiff receive a consultation with a pain management specialist, and on October 18, 2005, an orthopedic surgery consultation was requested. (Id. ¶ 22.) On October 19, 2005, Plaintiff received an MRI of his cervical spine, which revealed moderate narrowing of the C5-6 and C6-7 discs with cord encroachment. (Pl.'s Decl., Ex. C, at C5-6; Levin Decl. ¶¶ 22, 24.) On November 9, 2005, the Calipatria Supervising Nurse was unable to locate a provider that performed cervical epidural injections. (Levin Decl. ¶ 22.) On January 26, 2006, Plaintiff received Demerol for his pain. (Id. ¶ 25.)

On January 26, 2006, gram stains and cultures were performed on material taken from an abscess on Plaintiff's left leg. (Defs.' Mot., Ex. 2, at 1178.) Besides a light growth of bacteria presumed to have resulted from skin contamination, no organisms were isolated from

---

[8] The Court takes judicial notice that tetracycline is an antibiotic.

[9] The Court takes judicial notice that Demerol is a narcotic drug.

[10] The Court takes judicial notice that morphine is a narcotic drug.

1 the cultures, and the gram stain did not reveal organisms or leukocytes.[11]

2 A note in Plaintiff's chart on February 16, 2006 indicated that Dr. Smith did not perform cervical epidural injections. (Levin Decl. ¶ 22.) Also on February 16, 2006, defendant Dr. Levin approved a request that Plaintiff receive a cervical epidural injection from Dr. Abdulhadi on March 17, 2006. (Id.) Plaintiff received a cervical epidural steroid injection on or about March 17, 2006. (Levin Decl. ¶ 26, Defs.' Mot., Ex. 2, at 1353.) On April 4, 2006, a medical practitioner told Plaintiff that past attempts to find a medical provider that performed cervical epidural injections were unsuccessful under the circumstances, but that a provider had been located that was able to perform the procedure. (Defs.' Mot., Ex. 2, at 591-92.)

On March 30, 2006, Dr. Smith indicated that Plaintiff had received a cervical epidural steroid injection approximately two weeks prior, and that Plaintiff should follow up with Dr. Smith in six to eight weeks. (Levin Decl. ¶ 26, Defs.' Mot., Ex. 2, at 1353.) On April 14, 2006, Plaintiff received another cervical epidural steroid injection at Alvarado Hospital. (Defs.' Mot., Ex. 2, at 590.) On April 21, 2006, Plaintiff received his third cervical epidural steroid injection. (Id. at 582, 589; Levin Decl. ¶ 29; Pl.'s Req. Submit Documentation Epidural Steroid Injections, at 6.)

On April 21, 2006 Plaintiff received a culture of his left thumb wound which revealed no organisms. (Defs.' Mot., Ex. 2, at 1175.)

On July 5, 2006, Family Nurse Practitioner Seleaina Ann Thomas requested Plaintiff receive a floor cell and a bottom bunk. (Req. Submit Documentation, Ex. H, at H1 ("Req. Prove").)

On September 7, 2006, Dr. L. Santiago wrote a memorandum indicating that Plaintiff had been prescribed Lyrica and Cynbalta on August 2, 2006, two nonformulary pain medications, as an alternative to Indocin, but that Plaintiff chose to discontinue these medications as he believed that his previous regimen of Neurontin and Baclofen[12] was more effective. (Pl.'s Req. Answer Defs.' Resp. Pl.'s Letter Dated Nov. 1, 2006, Ex. E, at E4.)

---

[11] The Court takes judicial notice that a leukocyte is a type of white blood cell.

[12] The Court takes judicial notice that Boclofen is a muscle relaxant medication.

1  Plaintiff was advised to continue using Neurontin and Baclofen. (Id.)

2  On September 25, 2006, Plaintiff was seen by his treating physician. (Id. at E1.) On
3  October 17, 2006, Plaintiff was receiving Neurontin, Baclofen, Pramadol, Motrin, and
4  Prednisone[13] for his pain. (Id.)

5  On October 31, 2006, Nurse Practitioner Thomas evaluated Plaintiff and requested a
6  psychiatric evaluation. (Pl.'s Req. Answer Defs.' Resp. Pl.'s Letter Dated November 1, 2006,
7  Ex. C, D ("Pl.'s Req. Answer").) Nurse Practitioner Thomas was also concerned that Plaintiff
8  might be having an adverse drug reaction to Neurontin. (Id., Ex. C.) Plaintiff was seen by Dr.
9  T. R. Robertson, a psychiatrist, the next day, who recommended that Plaintiff be released from
10 the Outpatient Housing Unit and for Plaintiff to follow up in 5 days. Nurse Practitioner
11 Thomas had Plaintiff remain in the Outpatient Housing Unit to taper/titrate Plaintiff's
12 Neurontin medication. (Id., Ex. A.) On November 1, 2006, Plaintiff signed a form indicating
13 that he refused to be examined or treated. (Req. Submit Document. Prove Further Violations,
14 Ex.) On December 13, 2006, a medical practitioner discontinued Plaintiff's prescriptions for
15 Rifampin and Bactrim and his temporary lower tier, lower bunk. (Req. Prove, Ex. A, at A1.)

## Discussion

**A.    Standards for Motion for Summary Judgment**

18  Under rule 56©) of the Federal Rules of Civil Procedure, a court may grant summary
19 judgment in favor of a party upon a claim "if the pleadings, depositions, answers to
20 interrogatories, and admissions on file, together with the affidavits, if any, show that there is
21 no genuine issue as to any material fact and that the moving party is entitled to a judgment as
22 a matter of law." A party moving for summary judgment bears the initial burden of establishing
23 an absence of a genuine issue of material fact for trial. See Devereaux v. Abbey, 263 F.3d
24 1070, 1076 (9th Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The
25 moving party may carry its initial burden on summary judgment by showing the opposing party
26 lacks sufficient evidence to carry its ultimate burden of persuasion at trial. See Celotex Corp.,

---

[13] The Court takes judicial notice that Prednisone is a corticosteroid medication used to treat inflamation.

1  477 U.S. at 325.

2  Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who must set forth specific facts showing that a genuine issue for trial exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 256 (1986). The opposing evidence must be sufficiently probative to permit a reasonable trier of fact to find in favor of the opposing party. See id. at 249-250. Thus, the nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Id. at 256. Furthermore, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Id. at 252. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. See Celotex, 477 U.S. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).

When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970) (citation omitted); Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. See Anderson, 477 U.S. at 255. The Court applies these standards in ruling on this motion for summary judgment.

**B.     Plaintiff's Claims**

Plaintiff alleges three causes of action pursuant to 42 U.S.C. § 1983. Section 1983 establishes a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

Plaintiff's first claim alleges that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment concerning his neck pain. Plaintiff's second claim alleges that Defendants violated Plaintiff's Eighth Amendment rights by failing to adequately treat his recurrent skin infections. Plaintiff's third claim alleges that defendant Dr. Nguyen violated Plaintiff's Eighth Amendment rights by failing to prescribe specific pain medications and by asking Plaintiff to place false information on a questionnaire from the California Attorney General's Office in exchange for better medical treatment. Plaintiff also complains in supplemental briefs about Family Nurse Practitioner Seleaina Thomas and Medical Technician Vrooman.

## C.     Qualified Immunity

Government officials performing discretionary functions enjoy qualified immunity that shields them from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Wilson v. Layne, 526 U.S. 603, 609 (1999). In order to overcome the defense of qualified immunity in a action for civil damages from a government official performing discretionary functions, a plaintiff must show that the official violated clearly established statutory or constitutional rights of which a reasonable person would have known. See Conn v. Gabbert, 526 U.S. 286, 290 (1999). The objective reasonableness of the act at issue is assessed in light of the legal rules that were clearly established at the time it was taken. See Davis v. Scherer, 468 U.S. 183,197 (1984).

"Qualified immunity is particularly amenable to summary judgment adjudication because 'the entitlement is an immunity from suit rather than a mere defense to liability.'" Martin v. City of Oceanside, 360 F.3d 1078, 1081 (9th Cir. 2004) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)). A court determining a motion for summary judgment based on a claim of qualified immunity must determine whether, viewing the evidence in the light most favorable to the non-moving party, the moving party has shown that there are no genuine issues of material fact in order to grant summary judgment. See id. Once a § 1983 defendant produces enough evidence to require the plaintiff to go beyond his or her pleadings, the

plaintiff must counter by producing evidence of his or her own; a district court is not allowed to simply assume the truth of challenged factual allegations in the complaint. See Butler v. San Diego Dist. Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004).

The Supreme Court annunciated a three-part test in Saucier v. Katz to determine whether a court will grant summary judgment based on the affirmative defense of qualified immunity. See Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006) (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

> First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the [official]'s conduct violated a constitutional right?" If the answer is no, the [official] is entitled to qualified immunity. If the answer is yes, the court must proceed to the next question: whether the right was clearly established at the time the [official] acted. That is, "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." If the answer is no, the [official] is entitled to qualified immunity. If the answer is yes, the court must answer the final question: whether the [official] could have believed, "reasonably but mistakenly . . . that his or her conduct did not violate a clearly established constitutional right." If the answer is yes, the [official] is entitled to qualified immunity. If the answer is no, he is not.

Id. at 1229 (internal citations omitted).

**1.     Whether Defendants' Conduct Violated A Constitutional Right**

State governments have the obligation to provide medical care for those whom they are punishing by incarceration. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). The infliction of unnecessary suffering on a prisoner through the failure to treat his medical needs is inconsistent with contemporary standards of decency and violates the Eighth Amendment. See id. A plaintiff bringing a § 1983 claim alleging a violation of the Eighth Amendment based on the failure of a prison official to treat his medical needs must establish that the prison official

or officials acted with "deliberate indifference" to a "serious medical need." See id. at 104; Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir. 1999). A defendant may not be held vicariously liable in a § 1983 action. See Mabe v. San Bernardino County, Dept. of Public Social Services, 237 F.3d 1101, 1109 (9th Cir. 2001); Palmer v. Sanderson, 9 F.3d 1433, 1438 (9th Cir.1993).

The Ninth Circuit has explained that the test for deliberate indifference consists of two parts. See Jett v. Penner, 439 F.3d 1091, 1096 (2006).

> First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong--defendant's response to the need was deliberately indifferent--is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."

Id. (internal citations omitted).

A prison official acts with deliberate indifference only if the official knows of and disregards an excessive risk to an inmate's health and safety. See Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Even if a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. See id. Furthermore, while poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not satisfy the requirement of deliberate indifference. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); see also Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) ("Mere medical malpractice does not constitute cruel and unusual punishment.").

Medical care less prompt or efficient than a free citizen might receive also does not

constitute deliberate indifference. See Wood, 900 F.2d. at 1335. In order for delay in treatment to constitute an Eighth Amendment violation, the delay must cause substantial harm. See id. (holding that a delay in treatment did not substantially harm the plaintiff since the only remedy immediately available was a prescription for pain killers); see also Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir.1985) ("[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . .").

Also, a difference of opinion between medical personal does not amount to deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Similarly, a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim. See Franklin v. State of Or., State Welfare Division, 662 F.2d 1337, 1344 (9th Cir. 1981).

### a. Treatment of Plaintiff's Cervical Condition

The Court concludes that the Defendants did not violate the Plaintiff's Eighth Amendment rights based on the Defendants' treatment of his cervical condition because the evidence fails to show that the Defendants' treatment using pain killers does not demonstrate deliberate indifference to Plaintiff's cervical medical condition.

Like the Plaintiff in Estelle, who saw multiple doctors and medical personnel on various occasions for his condition, Plaintiff received numerous examinations, consultations, tests, pain medications, and treatment for his cervical degenerative disk disease. See Estelle, 429 U.S. at 107. Plaintiff was treated at Pioneer's Memorial Hospital in Imperial County and in Alvarado Hospital in San Diego. (Pl.'s Decl. ¶¶ 6, 8, Ex. F, at F10.). The doctors ordered medical tests including an MRI, X-rays, nerve conduction tests, and a bone densitometry scan. (Id., Ex. B, at B3-4, Ex. C, at C1-3; Levin Decl. ¶ 22.) He saw Dr. Nguyen, Dr. David Smith, an orthopedic surgeon, Dr. Barba, a neurosurgeon, Dr. Jacobo, a neurologist, Dr. Levin, Dr. Abdulhadi, and other medical providers. (Pl.'s Decl., Ex. B, at B1-3, 5, Ex. C, at C1-3, 9; Levin Decl. ¶ 22.) During his treatment, the doctors ordered pain medications, including Indocin, Motrin, Vicodin, Neurontin, Morphine and Demerol. (Levin Decl. ¶ 15-16, 22; Pl.'s Decl., Ex. C, at C9.) Plaintiff declined to receive injectable pain medication if it was not

1  stronger than Toradol, a nonsteroidal anti-inflammatory drug, or Tylenol # 3, a combination
2  of acetaminophen and codeine. (Defs.' Mot., Ex. 2, at 673-74.) The doctors were properly
3  concerned about treating Plaintiff with narcotics, given his history of drug abuse, but used
4  these medications when they believed appropriate. (Levin Decl. ¶ 16.)

5        Additionally, Defendants referred Plaintiff for cervical steroid injections. Plaintiff's
6  evidence merely demonstrates that a medical provider at PMH told Defendants that he was
7  unable to perform cervical epidurals, and Plaintiff would have to be referred elsewhere to
8  receive the procedure. (Pl.'s Decl. ¶ 14, Ex. E, at E3.) Thereafter, Plaintiff received three
9  cervical epidural steroid injections. (Levin Decl. ¶¶ 26,29; Defs.' Mot., Ex. 2, at 582, 589-90,
10 1353; Pl.'s Req. Submit Documentation Epidural Steroid Injections, at 6.)

11       Moreover, Defendants are also entitled to summary judgment on Plaintiff's § 1983
12 claim concerning his cervical epidural steroid injections because Plaintiff has failed to provide
13 any evidence that any alleged delay caused him substantial harm. See Wood, 900 F.2d. at
14 1335.
15 Like the plaintiff in Wood, who was not substantially harmed by a delay in treatment because
16 the only remedy available was a prescription for pain killers, Plaintiff's only remedy for his
17 cervical condition was prescription pain killers. See id.

18       The evidence demonstrates that Defendants did not act with deliberate indifference to
19 Plaintiff's cervical condition because Defendants treated Plaintiff with pain medications and
20 referred Plaintiff for additional treatment. Additionally, Plaintiff failed to demonstrate that the
21 delay in epidural injections caused him substantial harm. Therefore, Defendants are entitled
22 to judgment as a matter of law regarding Plaintiff's claims about his treatment of his cervical
23 condition.

24       The Court also concludes that the evidence demonstrates that no Eighth Amendment
25 violation occurred based on Defendants' alleged failure to upgrade Plaintiff's pain pills
26 because Defendants' decision only amounted to a difference of opinion, which does not
27 constitute deliberate indifference. See Sanchez, 891 F.2d at 242.

28       On November 5, 2003, Dr. Nguyen prescribed Indocin. Additionally, Dr. Nguyen

1  decided that the pain medication Plaintiff was receiving at that point was adequate. (Pl.'s Decl.,
2  Ex. F, at F7.) From November 20, 2003 to April 17, 2004, Plaintiff received two renewals for
3  his Indocin and Neurontin prescriptions and refused admittance to the OHU five times. (Levin
4  Decl. ¶ 17-19, 27; Defs.' Mot., Ex. 2 at 670, 677, 679; Pl.'s Decl. ¶ 12.)

5        On April 18, 2004, Plaintiff was admitted to the OHU, was treated with a Toradol
6  injection, and left against medical advice on April 19, 2004, stating he was feeling fine. (Id.
7  at 665-68.) A note during that admission stated that amongst Plaintiff's prescriptions was
8  phenobarbital,[14] which he had previously requested and had been using at night because he said
9  it allowed him to sleep well. (Id. at 666, 671.) Plaintiff received a renewal of his phenobarbital
10 prescription on May 20, 2004. (Id. at 658.) On May 4, 2004, Plaintiff refused admission to the
11 OHU for pain control. (Levin Decl. ¶ 27; Pl.'s Decl. ¶ 12.)

12       On October 2, 2004, defendant Dr. Levin informed Plaintiff that his pain medications
13 required adjustment because Dr. Levin had received notification from Sacramento that
14 Neurontin, which was one of the medications used to treat Plaintiff's pain, could only be used
15 for FDA approved indications. (Levin Decl. ¶ 21.)

16       On April 12, 2005, and again on May 4, 2005, Plaintiff received Demerol for his pain
17 in the Calipatria Emergency Room. (Levin Decl. ¶ 22; Defs.' Mem., Ex. 2, at 627, 629.)
18 Defendant Dr. Nguyen was the physician on at least the second visit. (Id. at 627.) On June 21,
19 2005, Plaintiff received Morphine from Dr. Nguyen in the Calipatria Emergency Room for his
20 pain. (Levin Decl. ¶ 23; Defs.' Mem., Ex. 2, at 626.) On January 26, 2006, Plaintiff received
21 Demerol for his pain. (Levin Decl. ¶ 25.)

22       This evidence demonstrates that Defendants did not violate Plaintiff's Eighth
23 Amendment right by failing to follow Dr. Jacobo's recommendation to treat Plaintiff's pain
24 with upgraded pain pills. Although Dr. Nguyen decided that Plaintiff did not require additional
25 pain medication on November 5, 2003, at most that decision demonstrates a difference of
26 opinion between Dr. Jacobo and Dr. Nguyen, which does not amount to deliberate indifference.
27 See Sanchez, 891 F.2d at 242. Furthermore, the evidence demonstrates that Plaintiff was
28

---

[14] The Court takes judicial notice that phenobarbital is a barbiturate medication.

treated with additional pain control prescriptions and narcotics to control his pain, while at other times he refused to be admitted to the OHU to receive injectable pain medications. (Pl.'s Decl ¶ 12.) The evidence demonstrates that Defendants did not act with deliberate indifference regarding Plaintiff's medical treatment. Therefore, Defendants are entitled to summary judgment on the basis of qualified immunity regarding that portion of Plaintiff's claim. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's first claim alleging Defendants were deliberately indifferent to Plaintiff's neck pain.

### b. Treatment of Plaintiff's Recurrent Skin Infections

The Court concludes that the Defendants did not violate the Plaintiff's Eighth Amendment rights based on the Defendants' treatment of his skin condition because the Defendants' antibiotic treatments fail to demonstrate deliberate indifference to Plaintiff's skin infections.

On December 25, 2002, Plaintiff was diagnosed with acute sinusitis, peritonsillar cellulitis, and a lip abscess. (Pl.'s Decl., Ex. F, at F9.) He was treated with intravenous Unasyn and oral Flagyl. (Id.) On December 26, 2002, his abscess was incised and drained, and on December 27, 2002 Plaintiff was transferred to Alvarado Hospital to be treated by an otolaryngologist. (Id., Ex. F, at F10.) A culture from the lip area collected December 26, 2002, revealed methicillin-resistant staphylococcus aureus. (Id. at F5.) A culture taken from Plaintiff's wrist on January 22, 2003 revealed the same organism. (Id. at F6.) Plaintiff was seen in an Emergency Room on May 17, 2003 for a swollen right eyelid. (Id., Ex. F, at F13.) Plaintiff was treated with Bactrim and a triple antibiotic ointment. (Id. at F12-13.)

On November 25, 2003, Plaintiff submitted a California Department of Corrections inmate appeal form, form 602, log number CAL-D-04-00078, stating that he was dissatisfied that Dr. Nguyen did not prescribe Plaintiff any antibiotics for his staphylococcal infection on November 20, 2003. (Id., Ex. D, at D2-D3.) On November 26, 2003, Plaintiff was diagnosed with a "right lower extremity abscess–recurring lesions." and was treated with Bactrim and dicloxacillin. (Id., Ex. F., at F1- 2.)

On February 21, 2004, Plaintiff was seen for a nasal infection and was treated by Dr.

1  Nguyen with dicloxacillin. (Defs.' Mot., Ex. 2, at 676.) Two days later he was prescribed
2  Bactrim. (Id. at 676, 984.) On March 10, 2004, Plaintiff was seen for a follow up visit
3  regarding his nasal infection. (Id. at 675.) Plaintiff received a prescription for Ciprofloxacin
4  because the previously prescribed antibiotics had not cured Plaintiff's infection. (Id.)

5  On November 16, 2004, the California Department of Corrections Inmate Appeals
6  Branch denied Plaintiff's appeal, log number CAL-04-00078, regarding Dr. Nguyen's failure
7  to prescribe Plaintiff antibiotics after finding that Plaintiff was provided tetracycline on August
8  16, 2004, and that Plaintiff's blood work was negative for infection on September 16, 2004.
9  (Pl.'s Decl., Ex D, at D5.)

10  On January 26, 2006, gram stains and cultures were performed on material taken from
11  an abscess on Plaintiff's left leg. (Defs.' Mot., Ex. 2, at 1178.) Besides a light growth of
12  bacteria presumed to have resulted from skin contamination, no organisms were isolated from
13  the cultures, and the gram stain did not reveal organisms or leukocytes. (Id.) On April 21, 2006
14  Plaintiff received a culture of his left thumb wound which revealed no organisms. (Defs.' Mot.,
15  Ex. 2, at 1175.)

16  The Court concludes that Defendants were not deliberately indifferent to Plaintiffs'
17  recurrent skin infections because the evidence demonstrates that Plaintiff was treated with a
18  variety of antibiotics. At least four antibiotics other than cephalexin were used to treat his
19  infections, and when one antibiotic appeared not to be working, he received other antibiotics.
20  Additionally, cultures taken after January 2003 failed to show a recurrence of
21  methicillin-resistant Staphylococcus Aureus as a cause for his infections. Therefore, Plaintiff's
22  evidence does not satisfy the requirements for deliberate indifference. See Wood, 900 F.2d at
23  1334; Hallett, 296 F.3d at 744.

24  Similarly, Plaintiff's desire for treatment other than that which he received from
25  Defendants does not satisfy the requirements for deliberate indifference because questions of
26  additional diagnostic techniques or other forms of treatment are matters of medical judgment,
27  and do not form the basis of a § 1983 claim. See Franklin, 662 F.2d at 1344; Estelle, 429 U.S.
28  at 107. Accordingly, Defendants are entitled to summary judgment on Plaintiff's second claim

1  based on qualified immunity.

2  ///

3      **c.**     **Failure to Prescribe Prednisone and Baclofen, Medical Questionnaire, and**
4                **Other Complaints**

5      The Court concludes that defendant Dr. Nguyen did not violate Plaintiff's Eighth
6  Amendment rights by failing to prescribe Plaintiff prednisone and baclofen for his pain
7  because the Court has previously concluded that the evidence demonstrates that Defendants
8  were not deliberately indifferent to Plaintiff regarding the treatment of his pain. See Estelle,
9  429 U.S. at 107; Wood, 900 F.2d at 1334; Hallett, 296 F.3d at 744; Franklin, 662 F.2d at 1344.

10      Additionally, the Court notes that Plaintiff provided insufficient evidence to support his
11  claim for deliberate indifference regarding defendant Dr. Nguyen's alleged request that he fill
12  out a questionnaire from the California Attorney General's Office for his medical treatment.

13      The Court also concludes that Plaintiff has failed to produce sufficient evidence
14  regarding his allegations concerning Family Nurse Practitioner Seleaina Ann Thomas and
15  MTA Vrooman on October 31, 2006, November 16, 2006, and December 13, 2006, to
16  demonstrate they were deliberate indifferent to Plaintiff's medical care. The Court notes that
17  on November 1, 2006, Plaintiff signed a form indicating that he refused to be examined or
18  treated. Under the totality of the evidence, Plaintiff has failed to show that they were
19  deliberately indifferent to his medical care. Moreover, even if Plaintiff had produced
20  supportive evidence, these allegations do not form the basis of a deliberate indifference claim
21  under the Eighth Amendment. Accordingly, the Court grants Defendants' motion for summary
22  judgment as to Plaintiff's third claim based on qualified immunity.

23      **2.**     **Whether Plaintiff's Eighth Amendment Rights Were Clearly Established**
24                **and Whether Defendants Could Have Reasonably but Mistakenly Believed**
25                **Their Conduct Did Not Violate a Clearly Established Constitutional Right**

26      Since the Court has concluded that Defendants are entitled to summary judgment on
27  each of Plaintiff's claims based on the evidence demonstrating an Eighth Amendment violation
28  did not occur, the Court does not need to reach the second and third Saucier questions. See

Skoog, 469 F.3d at 1229. If the Court had found that Plaintiff's Eighth Amendment rights were violated, however, a similar analysis would have led the Court to conclude that Defendants may have reasonably but mistakenly believed that their conduct did not violate Plaintiff's clearly established Eighth Amendment rights, entitling Defendants to qualified immunity.

**E.   Defendants' Objections to Plaintiff's Evidence**

The Court notes that Defendants filed a motion objecting to evidence offered by Plaintiff. To the extent that the evidence offered by Plaintiff is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent the evidence is not proper, the Court did not consider it.

## Conclusion

For the above reasons, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claims. Accordingly, the Clerk of the Court shall enter judgment for the Defendants.

IT IS SO ORDERED.

Dated: January 21, 2010

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.


Skoog, 469 F.3d at 1229. If the Court had found that Plaintiff's Eighth Amendment rights were violated, however, a similar analysis would have led the Court to conclude that Defendants may have reasonably but mistakenly believed that their conduct did not violate Plaintiff's clearly established Eighth Amendment rights, entitling Defendants to qualified immunity.

**E.   Defendants' Objections to Plaintiff's Evidence**

The Court notes that Defendants filed a motion objecting to evidence offered by Plaintiff. To the extent that the evidence offered by Plaintiff is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent the evidence is not proper, the Court did not consider it.

## Conclusion

For the above reasons, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claims. Accordingly, the Clerk of the Court shall enter judgment for the Defendants.

IT IS SO ORDERED.

Dated: January 21, 2010

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.